IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM PRICE,

          Plaintiff,

v.　　　　　　　　　　　　　　　　　CIVIL ACTION NO.  2:12-cv-05442

TROOPER MARSH, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiff's Motion to Amend the Complaint [Docket 34]. A response was filed [Docket 38], and the motion is ripe for review. For the reasons set forth below, Plaintiff's Motion to Amend the Complaint [Docket 34] is **DENIED**.

### I. Factual and Procedural History

On July 5, 2012, the plaintiff, William Price, filed an action under 42 U.S.C. § 1983 and West Virginia common law, alleging constitutional violations and tort claims relating to his arrest following several alleged traffic violations. The defendants named in Mr. Price's complaint were Trooper Marsh, Trooper John Doe, Colonel C.R. Smithers, and the West Virginia State Police. With regard to Trooper Doe, the complaint indicated that

> [a]t all times relevant, Defendant Trooper Doe ("Trooper Doe") was a West Virginia State Police Trooper and Officer acting under the color of law conferred upon him by virtue of his position as such a law enforcement officer. The true identity of Trooper Doe is unknown at the time of filing this Complaint.

(*Id.* at ¶ 3). Mr. Price originally filed his complaint in the Circuit Court of Kanawha County, West Virginia, and the defendants removed the case to this court on September 14, 2012. On October 2,

2012, I issued a scheduling order pursuant to Federal Rule of Civil Procedure 16(b) and Local Rule of Civil Procedure 16.1(e). The scheduling order set a deadline of January 17, 2013 for amendment of pleadings and joinder of parties. (Scheduling Order [Docket 6], at 1).

On July 12, 2013, Mr. Price moved to amend the complaint to substitute Trooper Claude Nathan Workman ("Trooper Workman") as a defendant for Trooper John Doe. (*See* Pl.'s Mot. to Amend Compl. [Docket 34]). Mr. Price indicated that the defendants first officially identified Trooper Workman as the police officer involved in the underlying arrest in their response to interrogatories issued June 4, 2013. Mr. Price additionally stated that Trooper Workman first officially confirmed that he was the officer in question at his deposition on June 13, 2013. (*See* Pl.'s Mem. of Law in Supp. of Mot. for Leave to Amend Compl. ("Pl.'s Mem.") [Docket 35], at 2-3). Trooper Workman responded that Mr. Price indicated through discovery proceedings that he had known since at least April 26, 2013 that he intended to amend the complaint to include Trooper Workman as a defendant. (*See* Trooper C.N. Workman's Resp. to Pl.'s Mot. for Leave to Amend Compl. ("Trooper Workman's Resp.") [Docket 38], at 4-5). Trooper Workman also asserted that Mr. Price could have—and potentially did—obtain the identity of Trooper Doe before the period to amend pleadings under the scheduling order had passed. (*See id.*).[1]

---

[1] Trooper Workman also alleged that Mr. Price indicated in his deposition that he "has known from the time of his arrest that Trooper C.N. Workman and Trooper R.A. Marsh were the arresting officers," and that the defendants referred to a document in their Rule 26(a)(1) initial disclosures that would have identified Trooper Workman as participating in Mr. Price's arrest. (Trooper Workman's Resp. [Docket 38], at 4). However, because these documents were not filed with the court, they will not be considered for the purposes of this Order.

2

**II. Analysis**

   **A. Standard of Review**

Federal Rules of Civil Procedure 15(a) and 16(b) both apply when a party requests to amend a pleading after the time to do so has passed under the scheduling order. Rule 15(a) applies to the amendment of pleadings generally, and provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 16(b), on the other hand, deals specifically with modification of a scheduling order, and states that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Fourth Circuit has noted the tension between these rules and found that "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). This district accordingly uses a two-step analysis to determine whether an untimely amendment should be allowed. "Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995).

"[A] scheduling order under Rule 16(b) is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Id.* at 253 (quoting *Goewey v. United States*, 886 F. Supp. 1268, 1283 (D.S.C. 1995)). "Indeed, a scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1 in 'securing the just, speedy, and inexpensive determination of every action.'" *Id.* Therefore, in order to amend a

3


pleading after the deadline set forth in the scheduling order has passed, a party must satisfy the "good cause" standard of Rule 16(b).

The standard for showing good cause under Rule 16(b) was discussed by this court in *Marcum v. Zimmer*:

> A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15. Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Id.* at 254 (internal quotations omitted).

### B. Mr. Price's Motion for Leave to Amend the Complaint

Mr. Price alleges that good cause exists for his delay in seeking to amend the complaint. Specifically, he argues that although the defendants had "informally indicated to Plaintiff's counsel that the identity of Trooper John Doe was that of Trooper Workman," the first time the defendants officially identified Trooper Workman was in their response to interrogatories served upon Mr. Price on June 4, 2013. (Pl.'s Mem. [Docket 35], at 2). Additionally, Mr. Price notes that Trooper Workman first identified himself under oath as the police officer involved in Mr. Price's arrest at his deposition on June 13, 2013. (*Id.* at 2-3). Trooper Workman counters by noting that, when issuing discovery requests on April 26, 2013, Mr. Price altered the style of the case to include "Trooper John Doe *and/or Trooper Workman*," and issued the requests to "Defendants Trooper Marsh, *Trooper Workman*, Colonel C.R. Smithers, and the West Virginia State Police." (Trooper Workman's Resp. [Docket 38], at 4-5; Ex. A [Docket 38-1], at 1) (emphasis added). Thus, Trooper Workman argues, "it is evident that at this time Plaintiff intended to amend the Complaint to name

4

Trooper Workman as a Defendant; however, he waited more than two months to file the instant Motion." (Trooper Workman's Resp. [Docket 38], at 5).

"The touchstone of 'good cause' under Rule 16(b) is diligence. In other words, the focus of the good cause inquiry is on the diligence of the party seeking modification of the scheduling order." *Humphries v. Whitfield*, No. 5:12-CV-187-BR, 2013 U.S. Dist. LEXIS 82675, at *3 (E.D.N.C. June 12, 2013) (internal quotations omitted). Here, the parties were put on notice by my October 2, 2012 scheduling order that amended pleadings were due by January 17, 2013. (*See* [Docket 6], at 1). Moreover, it is clear from the complaint itself that Mr. Price was aware that the identity of Trooper Doe had to be ascertained so the complaint could be amended to include him. Mr. Price additionally had ample time to request information regarding the identity of Trooper Doe through written discovery. Indeed, a review of the docket shows that although the defendants began initiating discovery on October 3, 2012 (Certif. of Serv. for Defs.' Trooper Marsh, Colonel Smithers and the W. Va. State Police's First Set of Reqs. for Admiss. to Pl. [Docket 7]), Mr. Price did not issue any requests for discovery until April 26, 2013 (Certif. of Serv. for Pl.'s First Set of Interrogs. and Req. for Produc. of Docs. to Defs. Trooper Marsh; Trooper John Doe and/or Trooper Workman; Colonel C.R. Smithers; and the W. Va. State Police [Docket 18]), more than three months after the time for amending pleadings and joining parties had passed. Mr. Price also never requested an extension of time to amend pleadings, despite knowing that Trooper Doe, not an identified party, remained a defendant in the action. Finally, Mr. Price's interrogatories to the defendants attempted to alter the style of the case and list Trooper Workman as a defendant, indicating that Mr. Price knew by at least April 26, 2013 that he intended to add Trooper Workman as a defendant in the matter. (*See* Trooper Workman's Resp., Ex. A [Docket 38-1]; Certif. of Serv.

5

for Defs.' Trooper Marsh, Colonel Smithers and the W. Va. State Police's First Set of Reqs. for Admiss. to Pl. [Docket 18]). However, Mr. Price waited until July 12, 2013, nearly three months after his attempt to alter the case's style and nearly six months after the deadline for amended pleadings set forth in the scheduling order, to file his motion for leave to amend the complaint. Mr. Price's assertions that he waited until he had Trooper Workman's testimony under oath do not change this analysis. It was not necessary for Mr. Price to wait until he had testimony under oath to request leave to amend the complaint, and he could have obtained the same information through discovery before the deadline for amending pleadings had passed. *See Cook v. Howard*, 484 F. App'x 805, 817 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 1600, 185 L. Ed. 2d 580 (2013) (upholding the district court's denial of the plaintiff's motion to amend the complaint, and noting that "[d]espite the [plaintiffs] knowing there were as-yet-unidentified individuals involved in the events they alleged occurred on August 14, and despite their expressed desire to include these 'John Doe' police officers as party defendants in their case, the [plaintiffs] did not pursue any discovery that would have allowed them to file a timely amendment of the complaint").

Mr. Price's arguments that granting leave to amend the complaint would not lead to any prejudice are also unpersuasive. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Marcum*, 163 F.R.D. at 254. Because I determine that Mr. Price was not diligent, I need not address the issue of prejudice under Rule 15(a).

Based upon the foregoing, I **FIND** that Mr. Price was not diligent in seeking leave to amend the complaint, and therefore the motion for leave to amend the complaint is **DENIED**.

6

### C. Dismissal of Trooper John Doe

Because I am denying Mr. Price's request to amend the complaint, I must determine what is to become of Defendant John Doe. The idea of an unnamed defendant is contrary to the Federal Rules of Civil Procedure. The Rules provide that "[t]he title of [a] complaint must name all the parties" (Fed. R. Civ. P. 10(a)), a defendant must be served with a summons within 120 days of the complaint being filed (*id.* at 4(m)), and the summons must name the parties (*id.* at 4(a)(1)(A)). Nowhere do the Rules allow or even mention actions against unnamed defendants. Indeed, the only reference the drafters of the Rules make to unnamed parties is in the Advisory Committee commentary accompanying Rule 17(a). Rule 17(a) requires a case to be brought "in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The commentary states

> [t]he provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitation period.

Fed. R. Civ. P. 17 advisory committee's note. Unfortunately for the courts interpreting Rules 4 and 10, no such explanation exists regarding the use of "John Doe" in the place of a defendant.

The Federal Rules of Civil Procedure are in stark contrast to other federal guidelines that permit the use of fictitious names or pseudonyms. In other types of proceedings, guidelines or other federal rules explicitly identify specific instances where the use of fictitious names or no

7

name at all may be appropriate. For example, where the Federal Rules of Civil Procedure state only the requirement that a complaint contain the names of all the parties, the Federal Rules of Criminal Procedure explicitly provide an exception to the name requirement for warrants. *See* Fed. R. Crim. P. 4(b)(1)(A) (stating that a warrant must "contain the defendant's name *or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty*") (emphasis added). Similarly, the Internal Revenue Code provides the Internal Revenue Service with a mechanism for issuing John Doe summonses (I.R.C. § 7609(f) (2012)), and the United States Code requires that real names not be used in juvenile proceedings (18 U.S.C. § 5038(e) (2012)). It would seem, then, that if the drafters of the Federal Rules of Civil Procedure intended for unnamed parties to be permitted in federal court, it would be provided for within the rules themselves or at least discussed in the commentary. This is particularly true given Rule 10's mandate that the names of the parties be included in the complaint and Rule 4's mandates regarding service.[2]

Due to these discrepancies, many federal courts initially held that a plaintiff could not state a claim against an unnamed defendant. *See, e.g.*, *Sigurdson v. Del Guercio*, 241 F.2d 480, 482 (9th

---

[2] Many scholarly articles discuss the use of John Doe pleading in federal court. *See, e.g.*, Howard M. Wasserman, *Civil Rights Plaintiffs and John Doe Defendants: A Study in Section 1983 Procedure*, 25 Cardozo L. Rev. 793 (2003); Carol M. Rice, *Meet John Doe: It Is Time for Federal Civil Procedure to Recognize John Doe Parties*, 57 U. Pitt. L. Rev. 883 (1996). Many of these articles explicitly note that the Federal Rules of Civil Procedure do not recognize filing a complaint against unnamed parties. *See, e.g.*, Wasserman, *supra*, at 816 ("The Federal Rules do not mention John Doe or unknown-defendant pleading . . . ."); Rice, *supra*, at 887 ("Neither the Federal Rules of Civil Procedure nor the Judiciary Code give courts guidance on the proper procedure for the use of Doe parties. If anything, codified federal procedure is inconsistent with John Doe practice, particularly the use of the Doe defendant."). Additionally, many articles address the complex issues of relation back and diversity of parties that arise when a complaint names a John Doe defendant. *See, e.g.*, Wasserman, *supra*, at 809-821 (discussing the issue of relation back and the "unique problem of John Doe defendants"); Rice, *supra*, at 913-940 (discussing the "inconsistent rules" for pleading unnamed defendants, the confusion of diversity jurisdiction standards, and problems with relation back). Additionally, this scholarship frequently argues for changes to federal procedure to explicitly allow for and set rules regarding the use of unnamed parties. *See, e.g.*, Wasserman, *supra*, at 842-862 (suggesting new procedures for federal courts to hear civil rights cases pleading John Doe defendants); Rice, *supra*, at 946-958 (proposing changes to federal procedure to allow Doe parties to formally become a part of federal civil procedure).

Cir. 1956) ("These John Doe complaints are dangerous at any time. It is inviting disaster to allow them to be filed and to allow fictitious persons to remain defendants if the complaint is still of record."); *Breslin v. City & Cnty. of Philadelphia*, 92 F.R.D. 764, 765 (E.D. Pa. 1981) ("Given the identification of the remaining defendants only as 'John Doe,' there is no method of serving the complaint in accord with due process, and no way that the action can otherwise proceed."). However, as plaintiffs in civil rights cases began to sue unnamed defendants with increasing frequency, judges began to create loopholes for those cases to proceed. *See, e.g.*, *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (stating "when, as here, a party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court").[3] However, none of these loopholes are based on statute, the Federal Rules of Civil Procedure, or a Supreme Court directive. Many early courts that determined plaintiffs could maintain an action against unnamed defendants relied on *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for support. *See, e.g.*, *Maclin*, 627 F.2d at 87 (citing *Bivens* for the proposition that "the use of fictitious names for defendants has been routinely approved even without discussion"). These decisions use the style of the case to support their claims that unnamed defendants are permitted in federal court. However, the Court in *Bivens* did not address

---

[3] In this area, the courts have failed to keep up with changing times. It has long been held that the courts "will not permit the use of a 'John Doe' designation for a defendant if the plaintiff's ignorance of the defendant's true identity is the result of willful neglect or lack of reasonable inquiry." *Saunders v. Boddie-Noell Enters.*, No. 7:08cv110, 2008 U.S. Dist. LEXIS 48715, at *6 (W.D. Va. June 25, 2008) (internal quotations omitted)); *see also, e.g.*, *Stratton v. City of Boston*, 731 F. Supp. 42, 45 (D. Mass. 1989) ("Moreover, the use of a fictitious name for a defendant will not be permitted if ignorance of the defendant's identity is the result of lack of reasonable inquiry.") (internal quotation omitted). When courts first began to recognize the validity of claims against John Doe defendants, it may have been very difficult or indeed impossible for many prospective plaintiffs in cases brought under 42 U.S.C. § 1983 to ascertain the names of the officials who had wronged them. However, today many other avenues are available to obtain the identities of public officials. In the instant case, Mr. Price could have filed a Criminal and Crash Report Request Form in order to obtain the identity of Trooper Workman before his complaint was filed. The form for such a request, WVSP 141, is readily available on the West Virginia State Police website. *See* West Virginia State Police Criminal and Crash Report Request Form, WVSP 141 (Oct. 2010), *available at* http://www.wvsp.gov/forms/Documents/crashReportRequestForm.pdf.

the merits of unnamed parties, much less hold that lawsuits against unnamed defendants are permitted in federal court. Indeed, by the time the case reached the Supreme Court, all of the defendants in *Bivens* had been identified. *See* Brief for Respondents at n.1, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (No. 70-301), 1970 WL 136799 ("The apparent contradiction in the title of this case—'Unknown Named'—arises from the fact that after petitioner filed his complaint, the United States Attorney supplied the clerk of the court with the agents' names.").

Recent Supreme Court jurisprudence seems to indicate that complaints naming unidentified parties as defendants should be dismissed. In order for a complaint to state a claim upon which relief can be granted, the Court has said that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004)). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 557). On its face, a complaint asserting allegations against a person whose identity is not known cannot do more than simply offer naked assertions and speculative facts. Where a party is not known or identified, a cause of action simply does not yet exist. No relief can be granted against an unidentified party. Additionally, federal courts maintaining jurisdiction over actions against John Doe defendants may very well be unconstitutional. Without an identified defendant, can a "case or controversy" truly exist under Article III?

The Fourth Circuit has noted that "[t]he designation of a John Doe defendant is generally not favored in the federal courts." (*Njoku v. Unknown Special Unit Staff*, No. 99-7644, 2000 U.S. App. LEXIS 15695, at *2 (4th Cir. July 7, 2000)). However it has nonetheless held that lawsuits against John Doe defendants are permitted where the "true identity of an unnamed party can be discovered through discovery or through intervention by the court." *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978) (reversing summary judgment where a pro se plaintiff had not initially named the defendants and stating that the plaintiff "should have been granted the opportunity to disclose the identity" of the defendants). However, this determination and its subsequent reiteration by the Fourth Circuit (*see Njoku*, 2000 U.S. App. LEXIS 15695, at *2) occurred in the era prior to *Twombly* and *Iqbal*. As the Fourth Circuit has noted, these decisions "require more specificity from complaints in federal civil cases than was heretofore the case." *Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012).

I simply do not see how it could be possible for a plaintiff to "allege 'enough facts to state a claim to relief that is plausible on its face'" (*Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 547)) without knowing the identity of the party against whom the claim is being asserted. Moreover, the Fourth Circuit has determined that a judgment may not be entered against a John Doe defendant. *See Njoku*, 2000 U.S. App. LEXIS 15695, at *2-3 (stating that "there is no basis to permit a judgment against an unidentified John Doe defendant to be sustained"). Allowing lawsuits against John Doe defendants to proceed is contrary to the Supreme Court's determination that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum

11

expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558. If a judgment may not be entered against an unnamed party, by definition it is impossible for a plaintiff to state a claim against an unnamed party upon which relief can be granted.

Trooper John Doe is still a party to this action, and the case is set to go to trial on October 1, 2013. Because a judgment cannot be entered against an unnamed party in the Fourth Circuit, Trooper Doe must be dismissed. Additionally, Federal Rule of Civil Procedure 4(m) provides that a defendant must be served within 120 days of the complaint being filed. The instant complaint was filed July 5, 2012. Trooper John Doe was never served, and Mr. Price never requested an extension of time from the court to serve him. Service on Trooper John Doe is also logistically impossible. Because Defendant Trooper John Doe was never served and cannot be served, he must also be dismissed for that reason. *See Treece v. S.C. Dep't of Mental Health SCDMH*, No. 33:08-03909-DCN-JRM, 2010 U.S. Dist. LEXIS 27989, at *6 (D.S.C. Mar. 24, 2010) (dismissing a John Doe defendant where more than 120 days had passed since the complaint was filed and the plaintiff did not request an extension of time for service); *Mauney v. Cricket/Bojangles Coliseum*, No. 3:11-cv-215-RJC-DCK, 2012 U.S. Dist. LEXIS 178730, at **1-2 (W.D.N.C. Dec. 18, 2012) (stating that after a complaint is filed, "it is incumbent upon a plaintiff to amend his pleadings to correctly identify the specific individuals involved so that the matter may proceed to judgment").

I therefore **FIND** that Mr. Price failed to timely serve Trooper John Doe pursuant to Federal Rule of Civil Procedure 4(m). I additionally **FIND** that judgment may not be entered against an unnamed party such as Trooper John Doe. For these reasons, Trooper John Doe is hereby **DISMISSED** from the instant action.

### III. Conclusion

For the reasons set forth above, Plaintiff's Motion to Amend the Complaint [Docket 34] is **DENIED**, and Trooper John Doe is hereby **DISMISSED** from this action.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, http://www.wvsd.uscourts.gov.

ENTER: September 25, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE